[Cite as *In re T.G.*, 2015-Ohio-5330.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

| | | |
|---|---|---|
| IN RE: T.G. | : | Case No. 15CA24 |
| S.G. | : | |
| | : | <u>DECISION AND JUDGMENT</u> |
| Adjudicated Dependent Children. | : | <u>ENTRY</u> |
| | : | |
| | : | **Released: 12/16/15** |

_____

<u>APPEARANCES:</u>

C.M. and D.M., Columbus, Ohio, Pro Se Appellants.

Keller J. Blackburn, Athens County Prosecutor, and Merry M. Saunders, Assistant
Athens County Prosecutor, Athens, Ohio, for Appellee.

_____

McFarland, A.J.

{¶1} This is an appeal from an Athens County Common Pleas Court,

Juvenile Division, judgment that awarded Athens County Children Services

(ACCS) permanent custody of T.G. and S.G. and denied a motion for legal custody

filed by Appellants, C.M. and D.M. On appeal, Appellants essentially contend that

the trial court erred in awarding permanent custody to ACCS. However, because

we find no error in the trial court's decision awarding ACCS permanent custody,

we find no merit to Appellants' sole assignment of error.[1] Accordingly, the

decision of the trial court is affirmed.

---

[1] As explained in more detail below, our review is severely limited due to Appellants' failure to file a transcript of the permanent custody hearing.

FACTS

{¶2}  On October 1, 2013, the two children at issue in this case, T.G. and S.G., were placed in the custody of Athens County Children's Services (ACCS) pursuant to an emergency ex parte order due to J.G.'s (the man they believed to be their father) medical condition, as well as the fact that their mother, A.M., had been criminally charged with sexual abuse related to charges in connection with another child residing in the household of S.G., T.G., J.G. and A.M.  After an initial shelter care hearing was held, emergency custody was continued with ACCS.  An adjudication hearing was held on November 18, 2013, followed by a dispositional hearing on December 10, 2013, resulting in the children being placed in the temporary custody of ACCS.  Review hearings were held in 2014 and the children were continued in the temporary custody of ACCS until a motion for permanent custody was filed by ACCS on October 10, 2014.

{¶3}  During the time the children were in the care and custody of ACCS, J.G. was determined through DNA testing not to be the children's biological father, despite the fact that A.M. had told the children he was their father.  Further, during this time the children began to have regular visitation with Appellants, who are their grandfather and step-grandmother.  Appellant C.M. is the biological father of A.M.  During this time, A.M. was incarcerated on multiple charges, including compelling prostitution, theft and aggravated possession of drugs.  The compelling

prostitution conviction involved a child who had lived with and been held out as the half-sibling of S.G. and T.G.  A.M. is not scheduled to be released from prison until 2018.

{¶4}  After the filing of the motion for permanent custody by ACCS, Appellants filed a memorandum in support of a motion to intervene and motion for visitation.  Although the memorandum represented that Appellants had previously filed a motion for temporary custody, motion for temporary placement and motion for visitation, this Court has been unable to locate any such filings in the record and the clerk's docket statement does not indicate any such motions were ever filed.  In any event, Appellants were granted party status and were permitted to intervene.

{¶5}  The record indicates that a hearing was held on ACCS's permanent custody motion, as well as Appellants' motion for legal custody, on April 14, 2015, April 22, 2015, and May 22, 2015, and that A.M. was present for part of the proceedings.  Appellants were also present, with counsel, and participated in the hearing.  Unfortunately, Appellants have failed to provide this Court with a complete record of the proceedings below in that they failed to file a transcript of the permanent custody hearing.  The trial court issued its final decision on June 11, 2015, awarding permanent custody to ACCS and denying Appellants' motion for

legal custody.  It is from this order that Appellants bring their timely appeal, assigning the following errors for our review.

ANALYSIS

{¶6}  In their sole assignment of error, Appellants contend that permanent custody was wrongfully awarded to ACCS and that they should have been permitted to adopt the children instead.  Thus, Appellants essentially contend that the trial court erred in awarding permanent custody to ACCS and in denying their competing motion for legal custody.  As indicated above, however, Appellants have failed to provide this Court a complete record of the proceedings below in that they have failed to file a transcript of the permanent custody hearing.

{¶7}  App.R. 9(B) states, in relevant part, "At the time of filing the notice of appeal the appellant, in writing, shall order from the reporter a complete transcript or a transcript of the parts of the proceedings not already on file as the appellant considers necessary for inclusion in the record and file a copy of the order with the clerk."  Because an appellant bears the burden of demonstrating error by reference to matters in the record, he has a duty to provide a transcript of the proceedings. *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980). In *Knapp*, the Ohio Supreme Court held: "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the

court has no choice but to presume the validity of the lower court's proceedings, and affirm." Id.

{¶8} Here, we are unable to determine from the record before us what evidence was presented during the hearing held on the motion for permanent custody filed by ACCS because Appellants failed to provide this Court with a complete record of the proceedings below. Likewise, Appellants also failed to provide an agreed statement for our consideration in the absence of the transcript, an alternative provided by App.R. 9. The record indicates that although Appellants initially requested a copy of the transcript, the court reporter filed a notice in the court below stating that she would not be transcribing the requested transcript because Appellants had not paid the required $1,000.00 deposit. We further note that the documents attached to Appellants' brief will not be considered on appeal, as it does not appear they were made part of the record in the proceedings below. Thus, they are not properly before this Court on appeal.

{¶9} We are mindful that Appellants are pro se litigants. While we are cognizant of the long-standing preference of Ohio courts to afford reasonable leeway to pro se parties, we have previously noted that "with respect to procedural rules, pro se litigants are held to the same standards as members of the bar." *St. Joseph's Hosp. v. Hoyt*, 4th Dist. Washington No. 04CA20, 2005-Ohio-480, ¶ 27. As we noted in *St. Joseph's Hosp.*:

> "[W]hile one has the right to represent himself or herself and one may proceed into litigation as a pro se litigant, the pro se litigant is to be treated the same as one trained in the law as far as the requirement to follow procedural law and the adherence to court rules. If the courts treat pro se litigants differently, the court begins to depart from its duty of impartiality and prejudices the handling of the case as it relates to other litigants represented by counsel." Id. at ¶ 28, quoting *Justice v. Lutheran Social Servs*, 10th Dist. Franklin No. 92AP-1153, 1993 WL 112497 (Apr. 8, 1993).

Nonetheless, in the interests of justice and bearing in mind the fact that this matter involves the termination of parental rights and responsibilities, we will review Appellants' assigned errors, to the extent possible, without the transcript.

STANDARD OF REVIEW

{¶10} A reviewing court generally will not disturb a trial court's permanent custody decision unless the decision is against the manifest weight of the evidence. *In re B.E.*, 4th Dist. Highland No. 13CA26, 2014-Ohio-3178, ¶ 27; *In re R.S.*, 4th Dist. Highland No. 13CA22, 2013-Ohio-5569, ¶ 29.

> " 'Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." ' " *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12; quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); quoting Black's Law Dictionary 1594 (6th Ed. 1990).

{¶11}  When an appellate court reviews whether a trial court's permanent custody decision is against the manifest weight of the evidence, the court " ' "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." ' " *Eastley* at ¶ 20; quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist. 2001); quoting *Thompkins* at 387; quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983).  Accord *In re Pittman*, 9th Dist. Summit No. 20894, 2002-Ohio-2208, ¶¶ 23-24.

{¶12}  The question that we must resolve when reviewing a permanent custody decision under the manifest weight of the evidence standard is "whether the juvenile court's findings * * * were supported by clear and convincing evidence." *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 43. "Clear and convincing evidence" is:

> "The measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established.  It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases.  It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23 (1986).

In determining whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990).  Accord *In re Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985); citing *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954) ("Once the clear and convincing standard has been met to the satisfaction of the [trial] court, the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof.").  Accord *In re Adoption of Lay*, 25 Ohio St.3d 41, 42-43, 495 N.E.2d 9 (1986). Cf. *In re Adoption of Masa*, 23 Ohio St.3d 163, 165, 492 N.E.2d 140 (1986) (stating that whether a fact has been "proven by clear and convincing evidence in a particular case is a determination for the [trial] court and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence").  Thus, if the children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, then the court's decision is not against the manifest weight of the evidence. *In re R.M.*, 4th Dist. Athens Nos. 12CA43 and 12CA44, 2013-Ohio-3588, ¶ 62; *In re R.L.*, 2nd Dist. Greene Nos. 2012CA32 and 2012CA33, 2012-Ohio-6049, ¶ 17; quoting *In re A.U.*, 2nd Dist. Montgomery No. 22287, 2008-Ohio-187, ¶ 9 ("A reviewing court will

not overturn a court's grant of permanent custody to the state as being contrary to the manifest weight of the evidence 'if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements * * * have been established.' ").  Once the reviewing court finishes its examination, the court may reverse the judgment only if it appears that the fact-finder, when resolving the conflicts in evidence, " 'clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' " *Thompkins* at 387; quoting *State v. Martin*, at 175.  A reviewing court should find a trial court's permanent custody decision against the manifest weight of the evidence only in the " 'exceptional case in which the evidence weighs heavily against the [decision].' " Id.; accord *State v. Lindsey*, 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

{¶13}  Furthermore, when reviewing evidence under the manifest weight of the evidence standard, an appellate court generally must defer to the fact-finder's credibility determinations. *Eastley* at ¶ 21.  As the *Eastley* court explained:

> " '[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment must be made in favor of the judgment and the finding of facts.
>
> * * *
>
> If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.' " Id.; quoting *Seasons Coal Co., Inc. v.*

> *Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn.3,
> quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at
> 191-192 (1978).

Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997). Accord *In re Christian*, 4th Dist. Athens No. 04CA10, 2004-Ohio-3146, ¶ 7. As the Ohio Supreme Court long-ago explained:

> "In proceedings involving the custody and welfare of children the
> power of the trial court to exercise discretion is peculiarly important.
> The knowledge obtained through contact with and observation of the
> parties and through independent investigation cannot be conveyed to a
> reviewing court by printed record." *Trickey v. Trickey*, 158 Ohio St. 9,
> 13, 106 N.E.2d 772 (1952).

{¶14} Furthermore, unlike an ordinary civil proceeding in which a jury has no contact with the parties before a trial, in a permanent custody case a trial court judge may have significant contact with the parties before a permanent custody motion is even filed. In such a situation, it is not unreasonable to presume that the trial court judge had far more opportunities to evaluate the credibility, demeanor, attitude, etc., of the parties than this Court ever could from a mere reading of the permanent custody hearing transcript. This is especially true here, where we were not provided with a copy of the transcript.

PERMANENT CUSTODY PRINCIPLES

{¶15}  A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388 (1982); *In re Murray*, 52 Ohio St.3d 155, 156, 556 N.E.2d 1169 (1990); accord *In re D.A.*, 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829.  A parent's rights, however, are not absolute. *D.A.* at ¶ 11.  Rather, " 'it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed.' " *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979); quoting *In re R.J.C.*, 300 So.2d 54, 58 (Fla.App.1974).  Thus, the state may terminate parental rights when a child's best interest demands such termination. *D.A.* at ¶ 11.

{¶16}  Before a court may award a children services agency permanent custody of a child, R.C. 2151.414(A)(1) requires the court to hold a hearing.  The primary purpose of the hearing is to allow the court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency. R.C. 2151.414(A)(1).  Additionally, when considering whether to grant a children services agency permanent custody, a trial court should consider the underlying principles of R.C. Chapter 2151:

"(A) To provide for the care, protection, and mental and physical development of children * * *;

* * *

(B) To achieve the foregoing purpose[ ], whenever possible, in a family environment, separating the child from its parents only when necessary for his welfare or in the interests of public safety."

PERMANENT CUSTODY FRAMEWORK

{¶17}  R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a child to a children services agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and that:

"(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated

an abused, neglected, or dependent child on three separate occasions
by any court in this state or another state.[2]"

Thus, before a trial court may award a children services agency permanent

custody, it must find (1) that one of the circumstances described in R.C.

2151.414(B)(1) applies, and (2) that awarding the children services agency

permanent custody would further the child's best interests.

{¶18} The record indicates that the trial court's decision was based upon its

R.C. 2151.414(B)(1)(a) finding that the children could not or should not be

returned to a parent within a reasonable amount of time. The record reflects that

the trial court further found that the children should not be placed with Appellants,

as the trial court perceived such a placement to put the children at risk once their

mother is released from prison. On appeal, Appellants seem to argue that they

should have been given more consideration as the best option for adoption of the

children, as they were next of kin, or essentially that it was in the children's best

interest that they, rather than ACCS, be awarded custody.

### a. Reasonable Time

{¶19} R.C. 2151.414(E) governs a trial court's analysis of whether a child

cannot or should not be returned to a parent within a reasonable time. The statute

requires the trial court to consider "all relevant evidence" and sets forth the factors

a trial court must consider in determining whether a child cannot or should not be

---

[2] R.C. 2151.414(B)(1)(e) became effective on September 17, 2014.

placed with either parent within a reasonable time.  The pertinent subsections of

the statute for this case are set forth below.  If the court finds the existence of any

one of the following factors, "the court shall enter a finding that the child cannot be

placed with either parent within a reasonable time or should not be placed with

either parent":

> "(7) The parent has been convicted of or pleaded guilty to one of the
> following:
>
> * * *
>
> (e) An offense under section 2905.32, 2907.21, or 2907.22 of the
> Revised Code or under an existing or former law of this state, any
> other state, or the United States that is substantially equivalent to the
> offense described in that section and the victim of the offense is the
> child, a sibling of the child, or another child who lived in the parent's
> household at the time of the offense;
>
> * * *
>
> (12) The parent is incarcerated at the time of the filing of the motion
> for permanent custody or the dispositional hearing of the child and
> will not be available to care for the child for at least eighteen months
> after the filing of the motion for permanent custody or the
> dispositional hearing."

{¶20}  In the case sub judice, the trial court found that the children cannot

and should not be returned to their mother within a reasonable time.  The court

found two R.C. 2151.414(E) factors present, specifically R.C. 2151.414(E)(7)(e)

and (12).  The trial court noted in its decision that R.C. 2151.414(E)(7)(e) was

applicable in that the mother of the children, A.M., had been convicted of

compelling prostitution of a minor in violation of R.C. 2907.21, and that the minor

victim was a member of her household, believed to be or at least held out to be the

half-sibling of the children at issue.  Further, a review of the record indicates that

A.M. was still incarcerated and would not be released until 2018, making R.C.

2151.414(E)(12) applicable as well.  Additionally, the trial court noted in its

decision that the children's father was unknown.

{¶21}  Again, without the benefit of having the transcript of the permanent

custody hearing before us, we must presume the validity of the proceedings below,

and in doing so, presume that these findings by the trial court are supported by

competent, credible evidence, and thus are not against the manifest weight of the

evidence.  Thus, we find no error with respect to the trial court's finding that the

children cannot or should not be returned to their mother within a reasonable time.

b. Reasonable Efforts

{¶22}  Although not specifically stated in this manner, we construe

Appellants' argument that they should have, as next of kin, been determined to be

a suitable placement for the children, to be an argument that the trial court's

reasonable efforts finding is against the manifest weight of the evidence.  R.C.

2151.419 governs a trial court's reasonable efforts findings and provides in section

(A)(1) as follows:

> "Except as provided in division (A)(2) of this section, at any hearing
> held pursuant to section 2151.28, division (E) of section 2151.31, or

section 2151.314, 2151.33, or 2151.353 of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency or private child placing agency that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. * * * *"

"By its terms, R.C. 2151.419 applies only at * * * adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state. The statute makes no reference to a hearing on a motion for permanent custody. Therefore, '[b]y its plain terms, the statute does not apply to motions for permanent custody brought pursuant to R.C. 2151.413, or to hearings held on such motions pursuant to R.C. 2151.414.' " *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 41; quoting *In re A.C.*, 12th Dist. Clermont No. CA2004-05-041, 2004-Ohio-5531, ¶ 30.

{¶23} Here, the trial court found that a reasonable efforts determination did not apply, since this was a hearing on a motion for permanent custody, but noted that ACCS had already established that reasonable efforts at reunification had been made prior to the hearing. Further, to the extent Appellants argue that the trial court was required to consider placing the children with them, as relatives, before it could award ACCS permanent custody, we disagree.

{¶24} We have previously recognized that a trial court need not consider relative placement before awarding a children services agency permanent custody. *In re C.T.L.A.*, 4th Dist. Hocking No. 13CA24, 2014-Ohio-1550, ¶ 52; accord *In re E.D.*, 2nd Dist. Montgomery No. 26261, 2014-Ohio-4600, ¶ 10; *In re J.H.*, 4th Dist. Hocking No. 14CA4, 2014-Ohio-3108, ¶ 27. A juvenile court need not determine by clear and convincing evidence that "termination of appellant's parental rights was not only a necessary option, but also the only option." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 64. Nor must "the juvenile court find by clear and convincing evidence that no suitable relative was available for placement." Id. R.C. 2151.414 "does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors." Id.; *In re J.K.*, 4th Dist. Ross No. 11CA3269, 2012-Ohio-214, ¶ 27. Rather, a juvenile court is vested with discretion to determine what placement option is in the child's best interest. *In re A.C.H.*, 2011-Ohio-5595, at ¶ 44. The child's best interest is served by placing the child in a permanent situation that fosters growth, stability, and security. *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 324, 574 N.E.2d 1055 (1991). Therefore, courts are not required to favor a relative if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody. *Schaefer* at ¶ 64.

{¶25} Thus, the trial court was not required to find that ACCS used reasonable efforts to place the children with a relative before awarding ACCS permanent custody, provided it determined it was in the children's best interest for permanent custody to be granted to ACCS. As such, we now turn our attention to the trial court's best interest analysis, as set forth in its decision and judgment entry, to determine whether the trial court's best interest finding is against the manifest weight of the evidence.

{¶26} R.C. 2151.414(D) requires a trial court to consider specific factors to determine whether a child's best interest will be served by granting a children services agency permanent custody. The factors include: (1) the child's interaction and interrelationship with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the child's wishes, as expressed directly by the child or through the child's guardian ad litem, with due regard for the child's maturity; (3) the child's custodial history; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.[3]

---

[3] R.C. 2151.414(E)(7) to (11) states:
"(7) The parent has been convicted of or pleaded guilty to one of the following:
(a) An offense under section 2903.01, 2903.02, or 2903.03 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those

{¶27} In the case at bar, a review of the trial court's decision indicates that

appropriate best interest findings were made by the trial court, which we must

presume, in the absence of a transcript, are supported by competent, credible

evidence. With respect to the child's interactions and interrelationships, the trial

court found that the children were well bonded to each other and their foster

parents. The trial court further found that although the children appear to have

---

sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;

(b) An offense under section 2903.11, 2903.12, or 2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;

(c) An offense under division (B)(2) of section 2919.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;

(d) An offense under section 2907.02, 2907.03, 2907.04, 2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;

(e) An offense under section 2905.32, 2907.21, or 2907.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;

(f) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a), (d), or (e) of this section.

(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.

(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

(10) The parent has abandoned the child.

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child."

enjoyed their limited contact with Appellants, the children's relationship with their mother was "clearly unhealthy" and that no father had been identified.

{¶28} With respect to the children's wishes, the trial court found that although the children stated they wished to live with Appellants, the children's counselor had recommended caution regarding the children's stated desires, explaining that the children do not talk about Appellants during counseling, but rather only mention the gifts received from Appellants. The trial court further found that the counselor testified that "the girls are still at the 'who will give me things' stage of attachment. With respect to the children's custodial history, the trial court found that although this was "not technically a '12 of 22' case[,]" the children had been in the same foster home since their removal on October 1, 2013, and that prior to that they were regularly left with many different people for care.

{¶29} Regarding the children's need for a legally secure placement, the trial court specifically found that an award of permanent custody to ACCS "will virtually insure" a legally secure placement, and that granting legal custody to Appellants would not. The trial court reasoned that granting legal custody to Appellants would leave open many quite troubling possibilities, including the possibility that their mother would retain residual rights that would allow her the "opportunity to worm her way back into" the children's lives, "either as children, or most certainly as young impressionable adults." The trial court found that a

grant of permanent custody to ACCS and adoption would eliminate those possibilities.  Further, despite praising Appellants for their commendable job with the children at present, the trial court noted C.M. had been unable to effectively parent the children's mother, which the court found concerning based upon its reasoning that these children would probably experience difficult times as well "given all that they had been exposed to regarding relationships."  In reaching its decision, the trial court further relied on the admonition contained in R.C. 2151.414(C) that in making its decision it not be influenced by the impact the decision will have on a parent, or in this case, other relatives.

{¶30}  Thus, it appears from our review of the trial court's decision that the necessary best interest factors were taken into consideration by the trial court and appear to weigh in favor of a grant of permanent custody to ACCS.  Again, our review is limited by the fact that Appellants failed to provide a transcript of the permanent custody hearing for this Court's review.  As such, in our review we must presume the validity of the proceedings and in doing so presume that the best interest findings as set forth in the trial court's decision are supported by competent, credible evidence, and thus are not against the manifest weight of the evidence.

{¶31}  We also note at this juncture that "[i]f permanent custody is in the child's best interest, legal custody or placement with [a parent or other relative]

necessarily is not." *In the Matter of A.A. and N.A.*, 4th Dist. Athens No. 14CA38, 39-40, 2015-Ohio-1962, ¶ 64; quoting *In re K.M.*, 9th Dist. Medina No. 14CA0025-M, 2014-Ohio-4268, ¶ 9. Here, we have discussed the trial court's best interest findings and have found no error with respect to its determination that a grant of permanent custody to ACCS was in the children's best interests. That same analysis applies here. Because the evidence supports the trial court's best interest finding, it also necessarily supports the court's decision to overrule Appellants' motion for legal custody. *In the Matter of A.A. and N.A.* at ¶ 64.

{¶32} In reaching this decision, we note the trial court's commendation of the job Appellants had done with the children and its statement that it did not believe Appellants were unacceptable people to parent children. However, it must be noted that "family unity and 'blood relationship' " may be "important factors to consider, [but] neither is controlling." Id. at ¶ 65; quoting *In re J.B.*, 8th Dist. Cuyahoga Nos. 98518 and 98519, 2013-Ohio-1703, ¶ 31. " '[N]eglected and dependent children are entitled to stable, secure, nurturing and permanent homes in the near term * * * and their best interest is the pivotal factor in permanency cases.' " Id.; quoting *In re T.S.,* 8th Dist. Cuyahoga No. 92816, 2009-Ohio-5496, at ¶ 35. Here, the trial court was entitled to weigh the Appellants' "blood relationship" with the children as a negative rather than a positive, in view of the

potential risk it created down the road in terms of the possibility, or probability, that the children's mother would be re-introduced into their lives.

{¶33} In light of the foregoing, and bearing in mind our limited review due to the lack of a complete record, we find no error with respect to the trial court's decision to award permanent custody to ACCS and to deny Appellants' motion for legal custody. Accordingly, Appellants' sole assignment of error is overruled and the decision of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellants.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, P.J. & Harsha, J.:  Concur in Judgment and Opinion.


For the Court,


BY:  _____
Matthew W. McFarland,
Administrative Judge


## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**