[Cite as *In re F.A.T.*, 2016-Ohio-350.]

STATE OF OHIO, MONROE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| F.A.T. | ) | |
| | ) | CASE NO. 14 MO 16 |
| | ) | |
| | ) | OPINION |
| | ) | |
| | ) | |
| | ) | |

CHARACTER OF PROCEEDINGS:    Civil Appeal from Court of Common Pleas, Juvenile Division of Monroe County, Ohio
Case No. 12 DNA 4884

JUDGMENT:    Affirmed.

APPEARANCES:
For Father-Appellant    Attorney Travis Collins
P.O. Box 271
Cadiz, Ohio 43907


For MCDJFS-Appellee    Attorney James Peters
101 North Main Street, Room 15
Woodsfield, Ohio 43793


JUDGES:

Hon. Mary DeGenaro
Hon. Cheryl L. Waite
Hon. Carol Ann Robb


Dated:  February 1, 2016

DeGENARO, J.

{¶1} Matthew Thompson, Father-Appellant, challenges the Monroe County Juvenile Court's decision terminating his parental rights to F.A.T., a minor child. On appeal, Matthew argues that the Monroe County Department of Job and Family Services failed to use reasonable efforts to reunite him with his child and that the juvenile court's decision to terminate his parental rights is not in the child's best interest. For the reasons discussed below, the judgment terminating Matthew's parental rights is affirmed.

### Relevant Facts and Procedural History

{¶2} On May 29, 2012, a complaint of abuse and neglect was filed by the Monroe County Department of Job and Family Services (MCDJFS) related to F.A.T (D.O.B 5/22/2012) in the Monroe County Juvenile Court. The complaint was based upon the child lacking adequate parental care. At the time the complaint was filed the father was unknown. MCDJFS was granted ex parte custody and thereafter, the child was adjudicated abused and neglected; custody was continued with MCDJFS.

{¶3} In November 2012, Matthew, mother's first cousin with whom she had resided in Mississippi, contacted MCDJFS and requested a paternity test, and on January 2, 2013 MCDJFS issued an administrative order finding Matthew was the biological father. On January 22, 2013, the agency requested that he contact the caseworker to incorporate himself in the case plan. In February 2013 Matthew suffered a prolonged psychiatric break which required two weeks of inpatient treatment, and then for a second time in March 2013. After the last discharge Matthew left Mississippi to return to Ohio.

{¶4} On April 16, 2013, MCDJFS filed an amended case plan providing visitation for Matthew. Matthew contacted the caseworker on May 17, 2013, and reported that he was unable to visit the minor child and unable to care for her at that time. He told the caseworker that he believed the child was taken care of in her current placement.

{¶5} On May 24, 2013, MCDJFS filed a motion to extend temporary custody and stated its intention to file for permanent custody once the child had been in the

agency's custody for more than twelve of twenty-two months. On June 13, 2013, the juvenile court granted the agency's motion and later amended the entry through a nunc pro tunc judgment to include additional language that stated reasonable efforts had been made by the agency through case plan services and routine visitation.

{¶6} On July 3, 2013, MCDJFS filed its first motion for permanent custody pursuant to R.C. 2151.413 for the reason that the child had been in the custody of the agency for twelve or more months of a consecutive twenty-two month period. Both Matthew and Mother requested court appointed counsel, and the matter was continued. Thereafter, the juvenile court judge recused himself and a new judge was appointed effective January 22, 2014.

{¶7} The permanent custody hearing was set for March 21, 2014. On March 11, 2014, the juvenile court sua sponte ordered MCDJFS to immediately begin case plan services for Matthew noting that the filing of a permanency action did not terminate the agency's duty to provide services. A case planning meeting was held and several services were identified for Matthew including: individual counseling; alcohol treatment; drug treatment; and parenting education.

{¶8} Permanent custody was denied as to Matthew on April 14, 2014. The juvenile court cited the lack of case plan services provided to Matthew as violating the reasonable efforts standard. Consequently MCDJFS amended the case plan and filed it with the juvenile court on April 17, 2014.

{¶9} Less than a month passed before MCDJFS filed its second motion for permanent custody. This time the motion was made pursuant to R.C. 2151.353 and Sections 2141.413 through 2151.415. In the May 9, 2014 motion MCDJFS stated:

> Although very little time has passed since this Court's previous Order on April 14, 2014, the movant did begin utilizing reasonable efforts to reunify the parties prior to that date, and ultimately made several modifications to the underlying case plan in order to attempt such a reunification. However, despite those reasonable efforts, Father has been involuntarily committed to the Appalachian Behavior Healthcare

Hospital pursuant to an Order of the Monroe County Court of Common Pleas.

**{¶10}** The second permanent custody hearing was held on June 25, 2014, at which time the juvenile court terminated Matthew's parental rights. The court found pursuant to R.C. 2151.414(B)(1)(d) that the minor child had been in the temporary custody of MCDJFS for twelve or more months of a consecutive twenty-two month period. Further, the court stated:

> Therefore, based upon all of the foregoing, testimony, and evidence submitted, the Court FINDS by clear and convincing evidence that the Monroe County Department of Job and Family Services used reasonable efforts to reunify Mr. Thompson and his daughter, however, Mr. Thompson has been unable to do so. His long history of increasingly severe mental illness coupled with his history of drug and alcohol abuse prevents him from being able to parent this young child. The Court FURTHER FINDS by clear and convincing evidence that the Monroe County Department of Job and Family Services used reasonable efforts toward Permanency Planning for the child and that it is in the best interest of the child that she be placed into the permanent custody of the Monroe County Department of Job and Family Services.

## Permanent Custody

**{¶11}** A parent's right to raise his or her children is an essential and basic civil right. *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), citing *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208 (1972). However, this right is not absolute. *In re Sims*, 7th Dist. No. 02-JE-2, 2002-Ohio-3458, ¶23. In order to protect a child's welfare, the state may terminate parents' rights as a last resort. *Id.*

**{¶12}** Before parental rights can be terminated, an agency must prove by clear and convincing evidence that a permanent custody order is in the best interests

of the child and one of the following provisions also apply: "(a) the child cannot be placed with either parent within a reasonable amount of time or should not be placed with either parent, (b) the child is orphaned, (c) the child is abandoned, (d) the child has been in the temporary custody of the agency for twelve or more months of a consecutive twenty-two month period." *In re J.Z.*, 7th Dist. No. 08 CO 31, 2009-Ohio-1937, ¶18 citing R.C. 2151.414(B)(1)(a)-(d).

**{¶13}** The evidentiary standard in permanent custody cases is clear and convincing evidence. R.C. 2151.414(B)(1). "Slightly less stringent than 'proof beyond a reasonable doubt,' the clear-and-convincing standard carries the highest burden of proof that can be required in a civil proceeding--defined as more than a mere preponderance of the evidence, clear and convincing evidence is that which is sufficient to establish a firm belief or conviction as to the facts sought to be established." *In re J.W.,* 171 Ohio App.3d 248, 2007-Ohio-2007, 870 N.E.2d 245, ¶15 (10th Dist.) citing *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

**{¶14}** As to the standard of review, "[a]n appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination." *In re G.N.*, 170 Ohio App.3d 76, 2007-Ohio-126, 866 N.E.2d 32, ¶27 (12th Dist.) citing *In re Starkey*, 150 Ohio App.3d 612, 2002-Ohio-6892, 782 N.E.2d ¶16 (7th Dist.).

### Reasonable Efforts

**{¶15}** In his first of three assignments of error, Matthew asserts:

> The Trial Court's decision must be overturned because there was not clear and convincing evidence to support the Trial Court's finding that the Agency had used reasonable efforts to reunite the minor child[1] with Mr. Thompson.

---

[1] The child's name was omitted by this court in all three assignments of error.

**{¶16}** R.C. 2151.419(A)(1)[2] provides:

Except as provided in division (A)(2) of this section, at any hearing held pursuant to section 2151.28, division (E) of section 2151.31, or section 2151.314, 2151.33, or 2151.353 of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency or private child placing agency that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts * * *

**{¶17}** R.C. 2151.419 does not apply to a motion for permanent custody filed pursuant R.C. 2151.413 or to a hearing held on a permanent custody motion pursuant to R.C. 2151.414. *In re C.F.,* 113 Ohio St.3d 73, 2007–Ohio–1104, 862 N.E.2d 816, paragraph one of syllabus. The trial court is only obligated to make a determination that the agency has made reasonable efforts to reunify the family at "adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state." *Id.* ¶41. However, "[i]f the agency has not established that reasonable efforts have been made prior to the hearing on a motion for permanent custody, then it must demonstrate such efforts at that time." *Id.* ¶43.

**{¶18}** In the present case, MCDJFS filed both permanent custody motions pursuant to R.C. 2151.413. Throughout the proceedings the juvenile court made findings that MCDJFS used reasonable efforts to prevent the child's removal from the

[2] Effective June 20, 2014

home, to eliminate the continued removal of the child and to make it possible for the child to return home, specifically in the following: May 29, 2012 shelter care entry; June 12, 2012 adjudication judgment entry; and the July 3, 2013 temporary custody nunc pro tunc entry. Therefore, there was no need to make an additional reasonable efforts finding at the time of the filing for permanent custody or at the hearing on the motion contrary to what the juvenile court, through a newly assigned visiting judge, stated in its judgment entry when denying the agency's first permanent custody motion.

{¶19} Matthew contends that the agency failed to use reasonable efforts to reunite him with the minor child. Specifically he argues that the case plan provided by MCDJFS only provided him with supervised visitation. He argues that he should have been provided additional services. However, courts have recognized an implied exception to the reasonable efforts requirement where case planning efforts would be futile. *In re T.F.,* 4th Dist. No. 07CA34, 2008–Ohio–1238, ¶34; *In re L.J.,* 12th Dist. No. CA2007–07–080, 2007–Ohio–5498, ¶36.

{¶20} The juvenile court found that Matthew had a long history of severe mental health issues including: bipolar, depressive, and schizoaffective disorder. Two weeks after the first permanency custody hearing his doctor deemed him a "mentally ill individual" that was subject to involuntary hospitalization…and that "[h]e has paranoid beliefs, confusion, hallucinations and cycling into a manic mood." Matthew was admitted to Appalachian Behavioral Healthcare on April 28, 2014 and was restored to competency and released from that facility the morning of the second permanent custody hearing on June 25, 2014. He had been admitted for hospitalization twice in 2013 while in Mississippi and twice in Ohio in 2009 for similar behaviors.

{¶21} Further, during the pendency of this case Matthew was indicted for two felony counts of aggravated menacing and charged with two counts of misdemeanor menacing stemming from threats allegedly made by Matthew against two MCDJFS caseworkers assigned to this matter. Although those charges remained unresolved

as of the date of the permanent custody hearing, this was the behavior which resulted in his involuntary committal on April 28, 2014.

**{¶22}** Matthew testified that he did not comply with the case plan as written regarding ongoing attendance at parenting classes and visitation with the minor child. Further, Matthew conceded he was unable to visit the minor child due to his hospitalization. Mathew acknowledged his ongoing issues with drugs and alcohol, and agreed with the diagnosis of bipolar and schizoaffective disorders which he has dealt with for over fifteen years. Matthew acknowledged that he has had audio hallucinations and would hear things that are not necessarily present. Matthew testified that he has had issues remaining compliant with his medications and has self-medicated with alcohol and marijuana.

**{¶23}** Based on Matthew's chronic mental illness, ongoing issues with drugs and alcohol, and unsuccessful completion of the case plan regarding visitation, it is evident that further case planning efforts would be futile. Accordingly, as the juvenile court had made a reasonable efforts finding and further case planning services would be futile, Matthew's first assignment of error is meritless.

### Best Interests

**{¶24}** In his second of three assignments of error, Matthew asserts:

The Trial Court's finding that the granting of permanent custody was in the minor child's best interests was not supported by clear and convincing evidence.

**{¶25}** "R.C. 2151.414(D) requires a trial court to consider specific factors to determine whether a child's best interest will be served by granting a children services agency permanent custody. The factors include: (1) the child's interaction and interrelationship with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the child's wishes, as expressed directly by the child or through the child's guardian ad litem, with due regard for the child's maturity; (3) the child's custodial

history; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply." *In re T.G.*, 4th Dist. No. 15CA24, 2015-Ohio-5330, ¶26.

**{¶26}** In determining it was in the minor child's best interest for permanent custody to be granted to the agency, the juvenile court found that there was very limited contact between Matthew and the child. Matthew exercised sporadic time with the child who recognized him as a playmate and there was no evidence of bonding between the child and Matthew. Matthew's mother visited the child when Matthew was hospitalized, however, she was not willing to assume any legal relationship with the child. The juvenile court found that the child had a very strong bond with the foster family and that this was the only family that the child has known as she has been living with them since she was six days old. The child is thriving in the foster home and the foster family wished to adopt her should that be possible.

**{¶27}** The juvenile court found that the child was approximately two years old and too young to express her wishes. The guardian ad litem recommended that permanent custody be granted and the child remain with the foster family. The juvenile court further found that the child needed a legally secure placement which could only be accomplished through permanent custody.

**{¶28}** Regarding the factors contained in R.C. 2151.414(E), the court found that (7) and (9) applied. Matthew had been charged, though not convicted, of domestic violence several times and at the time of the hearing was under indictment for two felony counts of aggravated menacing and two misdemeanor counts of menacing. Further, Matthew has a history with drugs and alcohol.

**{¶29}** The juvenile court properly considered the statutory factors and the record when determining that permanent custody was in the best interests of F.A.T. Accordingly, Matthew's second assignment of error is meritless.

### 24 Month Period

**{¶30}** In his final of three assignments of error, Matthew asserts:

"The Trial Court erred by finding that Mr. Thompson could not be reunited with the minor child due to the fact that "the twenty-four month period" for reunification had expired."

**{¶31}** Matthew does not contest the trial court's R.C. 2151.414(B)(1)(d) finding that the child had been in the custody of the agency for twelve of twenty-two months. Matthew does challenge the juvenile court's finding that the minor child could not be reunited with Matthew in a reasonable period of time under R.C. 2151.414(B)(1)(a). However, that finding was unnecessary in light of the court's determination that R.C. 2151.414(B)(1)(d) applied. "[O]nce it is clear that the child has been in the care of the agency for at least 12 of the previous 22 months, the only matter to be determined by the trial court is the best interest of the child." *In re G.G.*, 7th Dist. No. 12 CO 6, 2013–Ohio–3991, ¶ 17 citing *In re C.R.*, 7th Dist. No. 06 BE 53, 2007–Ohio–3179, ¶ 34.

**{¶32}** Other districts have also declined to consider an argument relating to R.C. 2151.414(B)(1)(a) when R.C. 2151.414(B)(1)(d) clearly applied. See *In re J.V–M.P.* 4th Dist. No. 13CA37, 2014–Ohio–486, ¶22; *In re H.D.*, 10th Dist. No. 13AP–707, 2014–Ohio–228, ¶15; *In re A.B.*, 8th Dist. No. 99836, 2013–Ohio–3818, ¶8-9; *In re Keckler*, 3rd Dist. No. 8–08–08, 2008–Ohio–4642, ¶ 8 (stating that once a trial court finds that R.C. 2151.414(B)(1)(d) applies, "any finding under R.C.2151.414(B)(1)(a) is unnecessary and, if against the manifest weight of the evidence, is harmless error").

**{¶33}** Therefore, because the minor child has been in the care of the agency for at least 12 of the previous 22 months pursuant to R.C. 2151.414(B)(1)(d), we need not consider Matthew's arguments with respect to R.C. 2151.414(B)(1)(a). Accordingly Matthew's third assignment of error is meritless.

## Conclusion

**{¶34}** Because the decision to grant permanent custody of F.A.T. to the Monroe County Department of Job and Family Services is supported by the record and in the best interests of the minor child, Matthew's assignments of error are

meritless and the decision of the juvenile court is affirmed.

Waite, J., concurs in judgment only.

Robb, J., concurs.