[Cite as *In re B.P.*, 2020-Ohio-4121.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
|  | : |  |
|  | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Patricia A. Delaney, J. |
| IN RE B.P. | : | Hon. Craig R. Baldwin, J. |
| IN RE P.P., JR. | : |  |
| IN RE A.P. | : | Case Nos. 2020 CA 00033 |
|  | : | 2020 CA 00034 |
|  | : | 2020 CA 00035 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeals from the Licking County Court
                                of Common Pleas, Juvenile Division,
                                Case Nos. F 2017 0039, F 2017 0038, F
                                2017 0040

JUDGMENT:                       AFFIRMED

DATE OF JUDGMENT ENTRY:         August 18, 2020

APPEARANCES:

For Father-Appellant:                  For LCJFS-Appellee:

JERMAINE L. COLQUITT                   WILLIAM C. HAYES
33 W. Main St., Suite 109              LICKING COUNTY PROSECUTOR
Newark, OH 43055
                                       PAULA M. SAWYERS
                                       20 South Second Street, 4th Floor
                                       Newark, OH 43055

For Child-Appellant:

NATHANIEL H. HURST
36 North Second Street
P.O. Box 919
Newark, OH 43058

*Delaney, J.*

{¶1}   Father-Appellant P.P. appeals the April 16, 2020 judgment entry of the Licking Country Court of Common Pleas, Juvenile Division, which terminated the parental rights, privileges, and responsibilities of Mother and Father with respect to their minor children and granted permanent custody of the children to Appellee, Licking County Job and Family Services, Children Services Division.

## FACTS AND PROCEDURAL HISTORY

{¶2}   Mother and Father are the biological parents of P.P. (born on July 25, 2016), A.P. (born on October 18, 2014), and B.P. (born on September 30, 2013). Mother and Father were married in October 2012 and divorced on June 24, 2019.

{¶3}   In January 2017, Appellee Licking County Job and Family Services, Children Services Division ("LCJFS") became involved with the family based on non-accidental injuries suffered by A.P. At the time of A.P.'s injuries, Mother and Father were married but separated. Father had an inconsistent relationship with the children. Mother was residing with her boyfriend and the children. It was determined that Mother's boyfriend injured A.P., causing bruising to his eye, ear, and groin area. Mother and her boyfriend were charged with child endangerment.

{¶4}   On January 26, 2017, an Emergency Ex Parte Order of Removal was issued authorizing the three children to be taken into custody pursuant to R.C. 2151.31(A)(3). On January 27, 2017, LCJFS filed complaints alleging B.P. and P.P. were dependent children and A.P. was an abused and/or dependent child. On March 24, 2017, at an uncontested adjudicatory and dispositional hearing, the children were adjudicated dependent and/or abused children. By agreement of all the parties and Guardian ad

Litem, the children were placed in the temporary custody of LCJFS and the case plan documents were approved for Mother and Father. The children were placed together in a foster family home.

{¶5}   On February 6, 2017, Mary Ellen Greenwaldt was assigned to work with the family as the Ongoing Social Worker. Greenwaldt developed Mother and Father's case plans, designed to assist the family with reunification. The case plans included the following objectives: completing a substance abuse assessment and mental health evaluation and follow all recommendations there from; complete random drug screens; establish stable housing and obtain employment sufficient to meet the basic needs of the children; complete a parenting education course and demonstrate the ability to protect the children and utilize appropriate parenting techniques. Additional objectives were identified for Mother including her ability to identify and protect against the risks of domestic violence and her compliance with probationary terms.

{¶6}   At the time of the children's placement in the custody of LCJFS, Father was residing with his mother. Greenwaldt recommended Mother and Father engage in marital counseling if they decided to pursue their relationship. They reconciled shortly in January 2017, but Mother moved in with her sister in February 2017. By March 2017, Mother and Father were residing together. Mother and Father started marital counseling on April 7, 2017.

{¶7}   Father struggled with managing his mental health issues. Father has a diagnosis of major depressive disorder, severe amphetamine-type substance stimulant use disorder, moderate alcohol use disorder, and severe tobacco use disorder. Father's

drugs of choice were Xanax and methamphetamines. He completed substance abuse treatment and tested negative on drug screens.

{¶8}   In January 2017, Father received inpatient treatment after B.P. witnessed him attempt suicide by putting a shotgun in his mouth. In April 2017, Father was hospitalized for suicidal ideations. Father engaged in substance abuse and mental health assessment at Behavioral Health Partners ("BHP") in early 2017. Father was prescribed medication for depression and anxiety but did not continue with the medication due to affordability.

{¶9}   Mother engaged in mental health counseling through The Woodlands in February 2017 where she was diagnosed with generalized anxiety disorder. Mother also entered the Diversion Program through the Licking County Municipal Court pursuant to her child endangering charge, which she completed in April 2018. She stopped counseling in May 2017 and returned in October 2017 through January 2018. In October 2018, she started counseling with BHP and attended two sessions in August and October 2019. Mother did not feel she needed mental health counseling but she was diagnosed with anxiety disorder, post-traumatic stress disorder, and major depressive disorder (remission). She was prescribed medication but did not take the medication due to affordability. Mother admitted she used marijuana and she completed substance abuse treatment in May 2018. Greenwaldt had no ongoing concerns about Mother's substance abuse.

{¶10} In April 2017, Mother moved back in with her sister and Father moved back in with his mother. Father made another suicide attempt in June 2017. In October 2017, Mother and Father reconciled. They attend three marital counseling sessions. In one

session, Mother stated that Father had been abusive towards her and had spanked their child too hard. Father admitted to hitting Mother and spanking their son in a manner that caused bruising. Mother had also been abused by her boyfriend, whom had abused A.P. In November 2017, Father stopped individual counseling.

{¶11} In January 2018, Mother and Father resided together at a home on Fulton Avenue in Newark. Both parents completed the parenting program through Pathways. Mother worked full-time. Father was also employed but was in a serious car accident in March 2018 that left him unable to work for three months. A child related to Father was a passenger in the car and also severely injured. Father started counseling with BHP in the summer of 2018 and began working again. On July 27, 2018, Mother and Father had made sufficient progress on their case plans that LCJFS returned the children to the parents' custody.

{¶12} After three weeks, however, the children were removed from the parents' custody due to a fight between Mother and Father. While the children were in the home, Mother and Father began to fight. The fight was taken outside to the car. As Mother was trying to remove car seats from the car, Father shifted the car into reverse and the open car door knocked Mother to the ground. Father remembered reversing the car but not hitting Mother with the car due to a history of blacking out when he was angry. Mother kicked Father out of the home and smoked marijuana to calm down. Greenwaldt found out about the incident a week later and removed the children to the custody of LCJFS and the foster family.

{¶13} Mother and Father divorced on June 24, 2019. Mother and Father still had a contentious relationship. Mother said Father threatened her life via Facebook if she lost

the children. Father told Greenwaldt that he wanted to hurt Mother and threatened to bring a gun to court because he knew how to get a gun through security. At the permanent custody hearing, Mother and Father did not want the other to know their home address.

{¶14} Mother moved in with her sister. In October 2019, Mother obtained housing appropriate for her and the children. During the proceedings, Mother remained consistently employed, albeit with nine different employers. Since August 2019, Mother was employed by Family Dollar as Assistant Manager for 40 hours per week, earning $600-$700 every two weeks. In 2019, Mother filed her taxes for the year 2018 and claimed the children as dependents even though the children resided with Mother for only three weeks in 2018. Mother received a $9,000 tax refund.

{¶15} Father moved in with his mother. Father was not consistent with his mental health counseling. He stopped taking medicine prescribed for his mental health issues due to financial reasons. He obtained employment with Denali Protective Services, with 12-hour shifts and earning $1,300 per month, but expressed concern to Greenwaldt regarding his ability to financially provide for the children.

{¶16} On December 27, 2018, LCJFS filed a Motion for Permanent Custody. The hearing on the motion was originally set for July 2019, but was continued until November 2019.

{¶17} Father obtained independent housing in November 2019.

{¶18} During the entirety of the case, the children resided with the same foster family. The siblings were bonded with each other. Unfortunately, the foster family was not able to adopt the siblings but were willing to care for them until the children achieved permanency. There were no available familial residential placements. When the children

were removed from the parents' care, B.P. was three years old, A.J. was two years old, and P.P. was nine months old. At the time of the permanent custody proceedings, B.P. was six years old, A.J. was five years old, and P.P. was two years old. The siblings were bonded with their foster family. B.P. was attending kindergarten and doing well in school. The children did not have any severe health issues. A.J. was diagnosed with failure to thrive due to his small size because they could not diagnose an underlying cause.

{¶19} A.J. and B.P. receive mental health counseling for post-traumatic stress disorder. P.P. has coped better because he has no memory of being removed from Mother or Father due to his young age. Mother and Father were offered a minimum of bi-weekly supervised visitation. Father had consistent visitation with the children since August 2018. Beginning January 2019, Mother was inconsistent with her visitation, often due to her work schedule. Mother communicated directly with the foster family to check on the children. By July 2019, Mother was removed from the visitation schedule due to her failure to attend eight of the thirteen scheduled visitation sessions in 2019. Her visitation was reinstated in August 2019. The parents' visitation with the children was appropriate and the children appeared to be bonded with Mother and Father. While P.P. did not remember Mother and Father, P.P. followed the lead of his siblings.

{¶20} Father filed a Motion for Legal Custody on October 21, 2019.

{¶21} The hearing on the motion for permanent custody was held on November 5, 2019 and December 9, 2019 before the magistrate. An attorney was appointed for B.P. because she expressed that she wanted to return to her Mother's care. A.J. and P.P. were found to be too young to express their wishes. The Guardian ad Litem recommended the children be placed in the permanent custody of LCJFS.

{¶22} On February 18, 2020, the magistrate issued a 21-page decision granting the LCJFS motion for permanent custody of the children. The magistrate found there was clear and convincing evidence that the children could not be placed with Mother or Father within a reasonable time or should not be placed with the parents. The parents met the case plan expectations, but it took them three years to end their dysfunctional relationship and obtain appropriate housing and employment. Greenwaldt and the magistrate were concerned with the stability of the parents' housing and employment as they were obtained shortly before the hearing for permanent custody. There was no dispute that the children had been in the custody of LCJFS for 12 or more months of a consecutive 22-month period. The magistrate next found that based on the factors of R.C. 2151.414(D)(1), it was in the best interest of the children to grant permanent custody to LCJFS.

{¶23} Mother, Father, and B.P. filed objections to the Magistrate's Decision. The trial court noted that Father's objections to the Magistrate's Decision were not supported by any references to the audio record of the court proceedings or to the written transcript. The trial court found that Father's objections, which argued the Magistrate's Decision was against the manifest weight of the evidence and not support by clear and convincing evidence, did not meet the requirements of Juv.R. 40(D)(3)(b)(ii). The trial court overruled the objections by judgment entry issued on April 16, 2020.

{¶24} It is from this judgment Father now appeals.

**ASSIGNMENT OF ERROR**

{¶25} Father raises one Assignment of Error:

{¶26} "THE TRIAL COURT'S DECISION GRANTING PERMANENT CUSTODY IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE. THE AGENCY DID NOT PROVE THE CHILDREN CANNOT OR SHOULD NOT BE PLACED WITH THEIR PARENTS WITHIN A REASONABLE TIME AND DID NOT PROVE THAT GRANTING PERMANENT CUSTODY IS IN THE CHILDREN'S BEST INTEREST."

**ANALYSIS**

{¶27} Father argues the trial court erred in its two-pronged analysis as to whether permanent custody of the children should be granted to LCJFS. We disagree.

{¶28} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA5758 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶29} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶30} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant

permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶31} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶32} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶33} If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶34} Father argues the trial court's decision that the children could not be placed with Father within a reasonable time or should be placed with Father was not supported by the clear and convincing evidence. The trial court found that pursuant to R.C. 2151.414(B)(1)(a) and 2151.414(E), could not be placed with Mother or Father within a reasonable time or should not be placed with Mother or Father. The trial court considered the factors delineated in R.C. 2151.414(E). It found specifically under R.C. 2151.414(E)(1) and (4) that the children should not or could not be placed with Mother or Father:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and

rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

* * *

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

{¶35} In this case, we agree that despite reasonable case planning and diligent efforts by LCJFS to assist Mother and Father, the children cannot be placed with Mother or Father within a reasonable time. When the children were initially removed from the parents' care, the parents had 18 months of participating in case planning and reunification services before the children were returned to parents in July 2018. Within three weeks, the children were removed based on the parents' behaviors. Mother and Father had an argument in front of the children resulting in Father hitting Mother with the car. Father admits to blacking out when the incident occurred.

{¶36} The record shows that while Father completed his case plan, Father did not address his anger issues. The successful completion of a case plan is not dispositive on the issue of reunification. *In re W.A.J.*, 8th Dist. Cuyahoga No. 99813, 2014-Ohio-604. Where a parent has participated in his case plan and completed most or all of the plan requirements, a trial court may still properly determine that such parent has not substantially remedied the problems leading to agency involvement. *In re A.H.*, 5th Dist. Richland No. 18CA96, 2019-Ohio-1509, 2019 WL 1777306, ¶ 39 citing *In the Matter of*

*A.L. and J.L.*, 5th Dist. Guernsey No. 11 CA 23, 2012-Ohio-481. During their relationship, Father admitted to hitting Mother and spanking his child hard enough to cause bruising. After Mother and Father were apart, Father threatened, while speaking to his case worker, to harm Mother and bring a gun to the trial court proceedings. Combined with Father's anger issues are Father's mental health issues. Father has attempted suicide at least twice, once in front of his child, and has had suicidal ideations requiring hospitalization. Father's commitment to his mental health treatment has been inconsistent.

{¶37} Father did not achieve housing appropriate for the children until November 1, 2019. The GAL described Mother and Father as engaging in a "scurry of activity to obtain housing, return to counseling" only within a few months of the permanent custody hearing.

{¶38} Finally, notwithstanding Father's argument on appeal, the amount of time the children have been in the temporary custody of LCJFS cannot be ignored. When LCJFS filed its motion for permanent custody, the children had been in the temporary custody of LCJFS for 17 months out of a consecutive 22-month period. In the consecutive 22-month period, the children were with parents for 20 days. At the completion of the hearing on the motion for permanent custody, the children had been in the temporary custody of LCJFS for 29 months and removed from their parents' care for 33 months.

{¶39} The best interest determination focuses on the child, not the parent. *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, at ¶ 59. The trial court noted the stability in the children's lives had been provided by each other and their foster family. After three years in the temporary care of LCJFS, the children deserve legally secure placement.

{¶40} We find the evidence in this case supports the trial court's determination that the children should be placed in the permanent custody of LCJFS. Father's Assignment of Error is overruled.

**CONCLUSION**

{¶41} The judgment of the Licking County Court of Common Pleas, Juvenile Division, is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Baldwin, J., concur.