OPINION
{¶ 1} Travis Mack, the father of A.U., appeals from a judgment of the Montgomery County Court of Common Pleas, Juvenile Division, which granted permanent custody of A.U. to Montgomery County Children Services ("MCCS"). A.U.'s mother, Angela Underwood, has filed a separate appeal from the trial court's *Page 2 
judgment, and she is not a party to this appeal. See In re A.U., Montgomery App. No. 22264. For the following reasons, the trial court's judgment will be affirmed.
 {¶ 2} A.U. was born on August 2, 2005, at Miami Valley Hospital. On August 9, 2005, MCCS filed a neglect and dependency complaint seeking custody of A.U. because Underwood tested positive for cocaine at the time of A.U. `s birth. Underwood had also voluntarily admitted herself to the Psychiatric Care Unit of Miami Valley Hospital upon request by the hospital due to her doctor's concerns about her behavior while at the hospital for A.U.'s birth. The trial court granted interim temporary custody to MCCS.
 {¶ 3} On August 10, 2005, MCCS filed a motion for "reasonable efforts bypass," pursuant to R.C. 2151.419(A)(2), seeking a determination that the agency did not have to make reasonable efforts to return A.U. to Underwood on the ground that Underwood's parental rights had been involuntarily terminated with respect to A.U.'s sibling. A hearing on the motion and on an amended neglect and dependency complaint was held on October 19, 2005. On November 16, 2005, the court awarded temporary custody to MCCS and granted the "reasonable efforts by-pass" motion.
 {¶ 4} On February 24, 2006, Underwood filed a petition for custody of A.U. On March 7, 2006, MCCS filed a motion for permanent custody of A.U. On March 24, 2006, Underwood filed an amended motion seeking legal custody or, alternatively, an extension of temporary custody or a planned permanent living arrangement. On May 2, 2006, Mack also filed a motion for legal custody, an extension of temporary custody, or a planned permanent living arrangement. A hearing on the motions was held before the magistrate on June 28, 2006. At that time, the magistrate also resolved Mack's *Page 3 
paternity suit and found that Mack was A.U.'s legal father.
 {¶ 5} On August 4, 2006, the magistrate granted permanent custody to MCCS. Both parents filed objections. On June 21, 2007, the trial court overruled the objections to the magistrate's decision. The court concluded that neither Underwood nor Mack had completed the case plan and that A.U. could not be placed with either parent within a reasonable period of time. The court rejected the parents' claim that MCCS failed to provide adequate services, and it found that placement to MCCS was within A.U.'s best interest. The trial court thus adopted the magistrate's decision granting permanent custody to MCCS.
 {¶ 6} Mack appeals from the trial court's ruling, raising two assignments of error.
 {¶ 7} I. "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY CONCLUDING THAT THE AGENCY HAD PROVEN BY CLEAR AND CONVINCING EVIDENCE THAT THE CHILD COULD NOT BE PLACED WITH THE FATHER WITHIN A REASONABLE PERIOD OF TIME."
 {¶ 8} In his first assignment of error, Mack claims that the trial court erred in concluding that A.U. could not be returned to him within a reasonable period of time. He argues that he substantially completed the objectives of his case plan and "those unmet were arguably done so due to lack of diligence on the part of the Agency." Mack further asserts that the trial court "misapplied" his performance on case plan objectives.
 {¶ 9} In a proceeding for the termination of parental rights, all of the court's findings must be supported by clear and convincing evidence. R.C. 2151.414(E); In re *Page 4 J.R., Montgomery App. No. 21749, 2007-Ohio-186, ¶ 9. The court's decision to terminate parental rights, however, will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established. In re ForrestS. (1995), 102 Ohio App.3d 338, 345, 657 N.E.2d 307; Cross v.Ledford (1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus; see, also, State v. Wilson, 113 Ohio St.3d 382,2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24 (clarifying civil manifest weight of the evidence standard).
 {¶ 10} R.C. 2151.414(B) sets forth the circumstances under which a court may grant permanent custody of a child to a children services agency. Pursuant to R.C. 2151.414(B)(1)(a), the court may grant permanent custody of a child if the court determines, by clear and convincing evidence, that (1) it is in the best interest of the child to grant permanent custody of the child to the children services agency, (2) the child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and (3) the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents. If the child has been in the custody of the children services agency for twelve or more months of a consecutive twenty-two month period, the court need only determine whether permanent custody is in the child's best interest. R.C. 2151.414(B)(1)(d). Here, the record indicates that A.U. had not been in temporary custody for twelve months at the *Page 5 
time that MCCS filed its motion for permanent custody.
 {¶ 11} Three witnesses testified at the hearing on the motion for permanent custody: Krishna Fowler, a caseworker for MCCS; Dr. Higgins, a psychologist; and Mack.
 {¶ 12} Fowler testified that she was assigned to Underwood's family in October 2005. According to Fowler, Mack's case plan required him (1) to complete a substance abuse assessment at Crisis Care; (2) to complete a psychological/parenting assessment; (3) to obtain stable housing and income; and (4) to attend a batterer's intervention or anger management program to address domestic violence issues. Fowler testified that Mack did not complete the assessment with Crisis Care. Mack attended only one appointment with Dr. Higgins, to whom he was referred for a psychological/parenting assessment. Fowler stated that Mack lived with his mother, and he told Fowler that he was working by moving trailers from state to state and later that he was fixing bathrooms in people's homes. Mack did not provide verification of his income. Mack informed Fowler that he completed anger management classes with Family Services, but he did not provide verification due to owing $25 for the certificate. Fowler testified that Mack had another incident of domestic violence with Underwood in March or April 2006, and he spent 30 days in jail due to a parole revocation.
 {¶ 13} Fowler further testified that A.U. was born premature, had a low birth weight, and she still uses an apnea monitor at night. A.U. recently had ear tube surgery and she suffers from acid reflux. Fowler indicated that Underwood's and Mack's visitation with A.U. has been inconsistent and sporadic. MCCS investigated the maternal and paternal grandmothers for possible placement, but found they were *Page 6 
both unsuitable. Mack's mother had indicated that, due to medical issues, she was not willing to care for A.U. Underwood's mother indicated that she was unwilling to complete a psychological assessment, that she did not want to be the primary caregiver, and that she believed that Underwood could take care of A.U. Fowler indicated that A.U.'s foster parent would like to adopt her.
 {¶ 14} With regard to Underwood, Fowler testified that the mother had been diagnosed with schizoaffective disorder, that she had been on and off her medication and that she had had three hospitalizations due to her mental disorder, the most recent from June 5 through 19, 2006. Underwood did not complete her substance abuse assessment and received sporadic treatment from Day-Mont. After Underwood was referred to Born Free due to a subsequent pregnacy, Underwood did not attend her appointments and Born Free terminated its services due to Underwood's noncompliance. Although Underwood had obtained appropriate housing in December 2005 through her mother and received Social Security benefits, Fowler indicated that she would "probably need additional income to be able to care for a child."
 {¶ 15} Dr. Higgins testified as to his assessment of Underwood and Mack. He stated that they were both scheduled for September 26, 2005, and they arrived one hour late. Dr. Higgins had Mack complete a personality test while he interviewed Underwood. Dr. Higgins did not speak with Mack at that appointment, but he reviewed the personality test. The test suggested that Mack had a narcissistic personality disorder as well as a histrionic personality disorder. Mack canceled two subsequent appointments, stating that he was ill. Mack did not attend the fourth scheduled appointment on December 16, 2005. Dr. Higgins stated that he was "not really" able to *Page 7 
determine anything about Mack's ability to parent. As for Underwood, Dr. Higgins sent MCCS a report indicating that Underwood had a severe mental disorder, that she was in need of significant mental health intervention and drug treatment. Dr. Higgins testified that he had concerns about Underwood's ability to parent a child and that someone with schizoaffective disorder could present a risk to the child.
 {¶ 16} Mack testified at the hearing that he lives with his mother, who has cancer, and that he plans to move into a two-bedroom apartment with his brother. Mack stated that he is self-employed as a carpenter, gaining employment through word of mouth. He approximated his income as $225 per week.
 {¶ 17} Mack stated that he did not complete the assessment through Crisis Care because the scheduled appointment interfered with his work schedule. He stated that he did "the first part" of his psychological and parenting assessment, but missed several follow-up appointments with Dr. Higgins because he was ill. Mack stated that he had the flu, that he went to the hospital, and then developed bronchitis. Mack testified that he could not get another appointment "because you can only miss so many appointments." Mack testified that he completed the anger management class through Caring Families.
 {¶ 18} As for visitation with A.U., Mack testified that visitation was scheduled for every Monday from 11:00 a.m. to 1:00 p.m. He acknowledged that his visitation was sporadic but explained that his sporadic attendance was due to his work schedule and then his 30-day jail term. Mack stated that he had not bonded with A.U. because he has not been around her. Mack requested that the court order more visitations rather than permanent custody to MCCS. He stated that he was willing to do "whatever it *Page 8 
takes" so that A.U. could be returned home.
 {¶ 19} On cross-examination by the guardian ad litem for A.U., Mack was asked about his recent home improvement jobs. He testified that, three weeks before, his employment consisted of spending two days laying tile. Mack indicated that he did not attend Crisis Care that week or attend visitation, yet he maintained that he did not attend Crisis Care because it interfered with his work schedule. Mack testified that he has completed applications for employment. Mack acknowledged that he did not make efforts to complete the parenting assessment on his own.
 {¶ 20} In addition to the above testimony, the guardian ad litem submitted a report to the court, which recommended that the motion for permanent custody be granted.
 {¶ 21} Based on the record, we find no error in the trial court's determination that A.U. could not be placed with Mack within a reasonable period of time and that placement to MCCS was in A.U.'s best interest. The record establishes that Mack failed to complete his case plan. Although Mack attended one appointment with Dr. Higgins, at which time he completed a personality test, he never spoke with Dr. Higgins and never received the psychological/parenting assessment. Mack was referred to Crisis Care for substance abuse treatment but failed to attend. Although Mack indicated that his income was approximately $225 per week, he did not verify his income. Mack has a history of domestic violence and anger management issues, and he was incarcerated due to a domestic violence incident with Underwood in March or April 2006. Mack acknowledged that his visitation with A.U. has been sporadic and he has not bonded with her. Although MCCS contacted Mack as the putative father of *Page 9 
A.U. shortly after her birth, Mack did not establish paternity until June 2006. Fowler testified that A.U.'s foster parent is interested in adopting her and could provide for A.U.'s needs. Upon review of the record, the evidence indicates that A.U. could not be returned to Mack within a reasonable time and that permanent custody to MCCS is in A.U.'s best interest. We have concluded in Underwood's appeal that the trial court did not err in finding that A.U. also could not be returned to her within a reasonable period of time. See In re A.U., Montgomery App. No. 22264. Accordingly, the trial court did not err in granting permanent custody of A.U. to MCCS.
 {¶ 22} The first assignment of error is overruled.
 {¶ 23} II. "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN ADOPTING AND CONFIRMING THE MAGISTRATE'S FINDING BY CLEAR AND CONVINCING EVIDENCE THAT THE AGENCY UTILIZED REASONABLE CASE PLANNING AND DILIGENT EFFORTS TO ASSIST THE PARENTS."
 {¶ 24} In his second assignment of error, Mack claims that MCCS failed to make reasonable efforts to assist him to complete his case plan. He states:
 {¶ 25} "The Agency produced only two witnesses, Caseworker Fowler and Dr. Higgins. Dr. Higgins could only testify that Father met him once, cancelled two appointments for health reasons, and that he had no opinion about Father's parenting ability or mental health (T-22). Dr. Higgins never contacted Father and offered to reschedule. Likewise, Caseworker Fowler never referred Father to any other psychologists. Further, she never made a home visit to Father's residence to assess its suitability. The Agency never verified that Father had completed the anger management class as indicated, never assisted him in finding (better) employment and *Page 10 
refused to adjust visitation times (T-85) so that Father might fully establish his relationship with the Child."
 {¶ 26} Mack notes that there were only eight months between A.U.'s removal and the motion for permanent custody.
 {¶ 27} Prior to an award of permanent custody to a public children services agency, the trial court must determine whether the agency has made "reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home." R.C. 2151.419(A)(1). "Reasonable efforts are described as being a good faith effort which is `an honest, purposeful effort, free of malice and the desire to defraud or to seek an unconscionable advantage.'"In re Cranford (July 24, 1998), Montgomery App. Nos. 17085 and 17105, citing In re Weaver (1992), 79 Ohio App.3d 59, 606 N.E.2d 1011. "The issue is not whether CSB could have done more, but whether it did enough to satisfy the `reasonableness' standard under the statute." In reSmith (Apr. 12, 2002), Miami App. No. 2001-CA-54. The agency bears the burden of establishing that it made reasonable efforts or that such efforts would be futile. In re Secrest, Montgomery App. No. 19377, 2002-Ohio-7096. When a trial court makes a determination under this statute, it is required to make written findings of fact detailing the relevant services provided by MCCS to the family and why those services did not enable the child to return home safely. R.C. 2151.419(B)(1).
 {¶ 28} Here, the trial court found that MCCS provided reasonable services, noting that the purpose of the agency "is to assist parents with the reunification process and to provide reasonable assistance in accomplishing that goal." *Page 11 
 {¶ 29} We agree with the trial court that MCCS's efforts were reasonable. MCCS referred Mack to Dr. Higgins for a parenting/psychological assessment. Mack attended the first session and canceled two subsequent appointments. Dr. Higgins testified that Mack had a fourth appointment scheduled for December 15, 2005, for which Mack did not show or call. Considering that MCCS had already referred Mack to Dr. Higgins and that Mack missed his last appointment without explanation, MCCS was not obligated to ensure that Mack complete the assessment. MCCS referred Mack to Crisis Care, but he did not attend. Mack told Fowler that "he hasn't been able to make it down there yet." The evidence demonstrated, however, that Mack was self-employed and did not work every day. Although MCCS did not make a referral regarding anger management, Mack acknowledges that he was already enrolled in a program. Mack did not provide a certificate of completion to MCCS. Although Mack stated that visitation interfered with his work schedule, Fowler testified that Mack had only recently asked for visitation to be changed to Saturdays. Upon review, we reject Mack's assertion that MCCS should have taken a more proactive role in ensuring that he complete his case plan. As stated by the trial court, "[t]he Agency is not in place to command parents to complete their case plan, but rather to act as a guide on the journey in reunification."
 {¶ 30} The second assignment of error is overruled.
 {¶ 31} The judgment of the trial court will be affirmed.
 BROGAN, J. and GRADY, J., concur. *Page 1